# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

APRIL PAYAN,

       Plaintiff,

v.

                            No. 12-CV-01045-WJ-SMV

THE VILLAGE OF RUIDOSO,

       Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

     THIS MATTER comes before the Court upon Defendant, the Village of Ruidoso's Motion for Summary Judgment, filed November 12, 2013 (Doc. 41). Plaintiff April Payan brings a claim for violation of her civil rights pursuant to the Civil Rights Act of 1964 as amended, 42 U.S.C. Section 2000e *et.seq.*,[1] specifically gender discrimination. She alleges that the Defendant hired Stephen Corbin ("Corbin") instead of the Plaintiff for the police officer position because Plaintiff is female. Defendant claims that the Plaintiff was not hired because she was not qualified. The Complaint (Doc. 1) asserts one count of discrimination. After considering all the facts presented by the parties, written and oral arguments of counsel and the applicable law, the Court finds that the Defendant's motion should be DENIED.

## BACKGROUND

## I.    Undisputed Facts[2]

### A.  The Hiring Process and Plaintiff's Application

---

[1] 42 U.S.C. Section 2000(e)(2)(m) states that "an unlawful employment practice is established when the complaining party demonstrates that…sex…was a motivating factor for any employment practice, even though other factors motivated the practice."

[2] The facts here are supported by the parties' exhibits and are undisputed unless otherwise noted.

The Plaintiff is a certified law enforcement officer at the Ruidoso Downs Police Department ("RDPD"). Around June of 2009, she applied for a certified patrol officer position with the Village of Ruidoso Police Department ("RPD"). At that time, there were no female police officers working at the RPD.

*Different Stages of RPD's Hiring Process*

> *(Stage 1)*: The Department runs a preliminary background check to verify that the applicant has no felony criminal record.

> *(Stage 2)*: Once cleared, the applicant interviews before an oral board.

> *(Stage 3)*: If the applicant passes, she undergoes a complete background check, which includes filling out a background information questionnaire, orally responding to questions regarding the applicant's answers to the questionnaire, and passing a voice stress analysis test ("VSA").

> *(Stage 4)*: Lastly, the applicant is forwarded to the Police Chief for a second personal interview. If approved, she is hired.

The RPD determined that the Plaintiff had no felony criminal background and that she met the minimum requirements for the position. Plaintiff interviewed with the Oral Review Board, one of whose members was Lt. Goar ("Goar"), second in command at the RPD. Plaintiff passed her interview with the Oral Review Board. [3]

Plaintiff filled out a background information questionnaire and returned it to Sergeant Ray Merritt ("Merritt") who was conducting her complete background check. Merritt prepared a

---

[3] In her Supplemental Brief (Doc. 59), Plaintiff attached a letter from Defendant's general counsel to the EEOC containing the phrase "[s]he did not pass the board interview process." Defendant explains that the "[s]he" referred to in the letter is not the Plaintiff because it is undisputed that Plaintiff interviewed with Merritt for her complete background check, which she could not have done without passing her interview with the Oral Board. Further, Plaintiff's counsel clarified at the February 27 hearing that he does not dispute that Plaintiff passed the Oral Board.

report called the Pre-employment Background Investigation Report ("PBIR") where he kept notes of the information he gathered on the Plaintiff.

Merritt asked Plaintiff about her answers to the background information questionnaire. He administered the VSA test, and the Plaintiff's result was "No Stress Indicated." In addition, the Plaintiff provided Merritt with a copy of the State Police Incident Report ("Report") which contained an allegation that Plaintiff sexually assaulted her coworker during her previous employment with the Sandoval County Sherriff's Office. The Plaintiff's version of this incident differed from that written in the Report.[4] While no criminal charges were filed, Plaintiff did receive a letter of reprimand for violating the department's code of conduct.

Subsequently, Merritt contacted Plaintiff's employer— the RDPD— and interviewed its Chief of Police, Al Ortiz ("Ortiz"). Ortiz rated Plaintiff as his least valuable officer, commenting that she has performance issues and that she brings the morale of the department down. He also stated that he would not re-hire the Plaintiff and recommended that RPD not hire her.

Merritt reviewed Plaintiff's RDPD personnel file, which according to Merritt's PBIR notes, contained a memo Plaintiff wrote to her supervisor, Corporal Minter ("Minter"). In her memo, Plaintiff complained that Minter was harassing her and treating her differently. Minter responded in a note that the department's Standard Operating Procedure should address her concerns. Ortiz wrote a rebuttal memo to the Plaintiff explaining that Minter was not treating her differently and did not hold grudges against her. *Deft's Ex. 2A, pg. 6-7.*

Merritt questioned Plaintiff about a traffic crash in Rio Rancho in which a crash report documented that Plaintiff was at fault. He also asked Plaintiff about her financial troubles such as

---

[4] The Report is not hearsay because Defendant offers the Report not to prove the truth of the information contained therein, but instead to show the effect on the listener. *See Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993). Also, Merritt never explicitly concluded in his interview notes that Plaintiff's story differed from that in the Report. It is unclear whether this fact is just defense counsel's observation.

delayed payments on an installment account and her bankruptcy in November 2006. Merritt wrote in his interview notes that Plaintiff answered "yes" to three of the questions on the Integrity Questionnaire without providing further explanation as instructed on the introduction page. Merritt concluded in his PBIR that Plaintiff "answered all questions posed to her… [that] [s]he appeared to be honest and open and did not appear to have attempted to conceal any fact." *Deft's Ex. 2A, pg. 10*.

Merritt met with Chief of Police, Wolfgang Born ("Born") to determine if he should continue with Plaintiff's background check. After reviewing Plaintiff's PBIR, Born concluded that RPD would not offer Plaintiff the position and instructed Merritt to end the investigation.

Plaintiff was informed that RPD decided not to employ her. Sometime afterwards, Dawna Reyes ("Reyes"), a Victim Assistance Advocate for RPD, informed Plaintiff that she was not hired because she is female. Reyes stated that Goar made two statements about not hiring female police officers.

B.  Steven Corbin's Application

Merritt also conducted the complete background check for Corbin who applied for the same patrol officer position. Corbin admitted to committing a series of petty crimes[5] for which he was never charged. He received positive recommendations from his current and previous employers. The Chief of Police from Corbin's previous employment stated that he could not think of any reason why RPD should not hire Corbin and that he would re-hire Corbin as a police officer.

---

[5] During a background investigation, Merritt determined that Corbin had received a stolen knife when he was a juvenile, stole hunting related items from his former employer, retained three M16 magazines from when he worked with the National Guard, possessed a 9MM pistol (handgun) when he was 19 or 20 years old, committed a misdemeanor in Iowa before he was a police officer when he allowed underage relatives to drink alcohol, and was verbally counseled after a citizen complained about his conducting a "press-check" of his weapon in a convenience store. Further, Corbin did not file the proper tax returns for his business.

Corbin's current supervisor stated that he had supervised Corbin for three years without any disciplinary problems and that he knew of no problems that would prevent Corbin's hiring. At the conclusion of Corbin's background investigation, Merritt noted that he cannot find any significant reason not to hire Corbin. *Deft's Ex. 2C, pg. 15*. RPD hired Corbin for the certified patrol officer position.

## II.      Plaintiff's Additional Facts

Plaintiff adds facts relating to complaints of discrimination by other female officers, Carolee Jones and Ramona Bailey. *See Pltff's Ex. C (Deposition of Jones) and Pltff's Ex. B (Deposition of Reyes)*.

After being heavily recruited by Goar, Carolee Jones began working as an officer for RPD in February 2012. Jones testified that after she was recruited by RPD, she was discriminated against by being closely monitored, disciplined more severely than male officers and being placed on a performance improvement plan. Jones quit the RPD after working for about a year because she could not handle the work environment. Jones filed an EEOC complaint for sex discrimination.

Further, Ramona Bailey, a former female police officer who worked at RPD until her retirement in 2006, filed a sexual harassment lawsuit against RPD. *Pltff's Ex. B, pg. 12, lines 3-15*.

## III.     Legal Standards

A.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed.R.Civ.P.56(c); *Fisher v. Forestwood Co. Inc.*, 525 F.3d 972, 978 (10th Cir. 2008). In considering a motion for summary judgment, the court shall view all of the facts in the light most favorable to the non-movant and draw all reasonable inferences from the record in the non-movant's favor. *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1249 (10th Cir. 2006).

B.   Title VII Framework

*Direct Evidence*

A plaintiff alleging discrimination may prove her case using direct or circumstantial evidence. *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008). Direct evidence is "evidence from which the trier of fact may conclude, without inference, that the employment action was undertaken because of the employee's protected status." *Id.*

*Circumstantial Evidence and the McDonnell Douglas Framework*

If a plaintiff uses circumstantial evidence to allege employment discrimination, her claims are analyzed under the *McDonnell Douglas* framework. *Id.*

First, the *McDonnell Douglas* framework requires the plaintiff to prove by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). To establish her prima facie case, plaintiff must show that (i) she belongs to a protected class; (ii) she applied and was qualified for a job for which the employer was seeking applicants; (iii) despite being qualified, the plaintiff was rejected; and (iv) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005).

If the plaintiff succeeds in making her prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."

*McDonnell Douglas Corp. v. Green*, 411 U.S.792, 802 (1973). To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the legally sufficient reasons for rejecting the plaintiff. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 255.

Once the defendant meets this burden, the plaintiff must then show by a preponderance of evidence "that there is a genuine dispute of material fact as to whether [the defendant's] proffered reason for the challenged action is pretextual." *Sanders*, 544 F.3d at 1105; *see also Texas Dep't of Cmty. Affairs*, 450 U.S. at 248. Plaintiff may show pretext by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *See Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004). Plaintiff may also survive summary judgment by introducing affirmative evidence of a discriminatory motive. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008).

## DISCUSSION

I.     **Goar's Statements as Circumstantial Evidence**

There is an issue concerning whether the following two statements allegedly made by Goar amount to a policy that itself discriminates, or whether they are merely statements of personal bias:

- That as long as he (Goar) was "second-in-command there wouldn't be any more female officers." *Deft's Ex. 4 (Reyes Deposition), page 15, lines 7-15.*
- That he (Goar) did not care to have another female officer. *Deft's Ex. 4 (Reyes Deposition), page 16, lines 20-25 & page 17, lines 1-12.*

Plaintiff claims that these statements are direct evidence of gender discrimination. She cites *Heim v. State of Utah*, 8 F.3d 1541, 1546 (10th Cir. 1993) where the Tenth Circuit

identified "statements showing 'an existing policy which itself constitutes discrimination' [as] direct evidence of discrimination." (*citing Ramsey v. City and Cnty. of Denver*, 907 F.2d 1004, 1007 (10th Cir. 1990)).

The Defendant relies on *Ramsey*, where the Tenth Circuit found that the supervisor's well-known beliefs about women's place in the workforce are not direct evidence of discrimination because there is no evidence that the supervisor acted on his discriminatory beliefs. 907 F.2d at 1007-08. Defendant asserts that to establish direct evidence, Plaintiff must show that the employer actually relied on her gender in making the employment decision because "[r]emarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989). In fact, *Heim* actually supports the Defendant's proposition that Plaintiff must show the employer relied on that gender remark in making the adverse decision. 8 F.3d at 1547.

The Court finds that these two statements constitute circumstantial evidence because rather than directly demonstrating that the Defendant's decision not to employ the Plaintiff was based on a discriminatory motive, the statements merely reflect Goar's personal belief about women in general that may or may not have been a basis for Defendant's hiring decision. Since the Plaintiff does not dispute the circumstantial nature of her remaining evidence, the Court shall apply the *McDonnell Douglas* analysis to the proffered facts.

## II.  The McDonnell Douglas Analysis

### A.  Plaintiff's Prima Facie Case

Parties agree that Plaintiff has met her prima facie burden, which notably has a low threshold. *See McCowan v. All Star Maint., Inc.,* 273 F.3d 917, 922 (10th Cir. 2001) (stating that the plaintiff's burden of establishing a prima facie case is not onerous). Here, the Plaintiff is

female, and she applied and was qualified for the Defendant's patrol officer position. Despite being qualified, the Plaintiff was not hired. Subsequently, the position remained open until Defendant hired Corbin, a male police officer who was also qualified for the job.

B. <u>Defendant's Burden to Offer Legitimate, Nondiscriminatory Reason for Its Hiring Decision</u>

The Defendant asserts that it decided not to hire the Plaintiff because of four nondiscriminatory reasons. First, the Defendant highlights that Ortiz gave poor reviews of the Plaintiff during his interview with Merritt. Not only did Ortiz rate Plaintiff as his least valuable officer, but also he recommended that RPD not hire her.

Ortiz provided examples to support his opinion. For instance,  Plaintiff received a written reprimand for not taking a police report as instructed; she became "defiant and insubordinate" during Ortiz' investigation into Plaintiff and her ex-husband's domestic violence incident; Plaintiff's job "performance level dropped…significantly" since the domestic violence investigation; Plaintiff wrote "a lot of memos complaining [mostly] about…unjust treatment of her"; her Police Officer Certification was being reviewed by the New Mexico Police Academy Board regarding a domestic violence issue and the Sandoval County sexual assault incident; and Plaintiff threatened RDPD with a harassment lawsuit after her boyfriend was instructed not to "hang out" in the RDPD dispatch center. *Deft's Ex. 2A, pg. 4; Doc. 42, pg. 4-5.*

Second, the Defendant claims that it uncovered other negative information about the Plaintiff. For example, Plaintiff disclosed a police report which contained an allegation that she sexually assaulted her co-worker.

Third, the Defendant asserts that Plaintiff had personal financial issues. She had declared bankruptcy in November 2006 and made delayed payments on an installment account.

Finally, Defendant claims that Plaintiff displayed a pattern of dishonesty by failing to make full disclosure during her complete background check. Defendant points to how the Plaintiff's story about her involvement in the Rio Rancho traffic accident differs from what's written in the crash report. Plaintiff's version of the Sandoval County sexual assault incident also differs from what's written in the police report. Moreover, Merritt had commented in his PBIR that Plaintiff wrote "yes" to three of the questions on the Integrity Questionnaire without further explanation even though the instruction page stated she must provide an explanation.

C.  Plaintiff's Burden to Show Defendant's Reasons Are Pretext

The Plaintiff responds that the Defendant's proffered reasons are pretext to cover up its intent not to hire the Plaintiff based on her gender.

Plaintiff argues that Ortiz's poor reviews are not credible because he was later terminated for time card fraud and misuse of grant money. However, the Court may consider only the facts available to the decision maker at the time of the decision. *See Rivera*, 365 F.3d at 925. At the time the Defendant was considering the Plaintiff for employment, the Defendant could not have known that Ortiz would be terminated in the future for his misconduct. Hence, the facts regarding Ortiz's termination are irrelevant.

Plaintiff further asserts that Ortiz's statements are hearsay. The Defendant's claim that Ortiz gave negative reviews of the Plaintiff is solely based on the notes Merritt took in his PBIR while interviewing Ortiz back in 2009. Subsequently, Ortiz died before the parties could obtain any sworn testimony from him. Plaintiff objects to the Court considering Ortiz's statements; however, they are admissible under hearsay rules and exceptions.[6]

---

[6] *E.g.* Fed.R.Evid. 803(1) present sense impression exception; 803(6) business records exception; admissible for its effect on the listener. S*ee Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993).

Next, Plaintiff objects to the Defendant's claim that other negative information about the Plaintiff was uncovered. Plaintiff argues that the police report documenting the sexual assault allegation is inadmissible hearsay. However under *Faulkner*, evidence is not hearsay if admitted to show its effect on the listener. 3 F.3d at 1434. Here, it is undisputed that Merritt had a copy of the police report at the time Defendant was considering the Plaintiff for employment. Therefore, Defendant may admit the police report for the purposes of showing that RPD relied on it to make its hiring decision.

Defendant raised an issue concerning Plaintiff's qualifications based on her prior financial history including a personal bankruptcy and late payments on an installment account. While Plaintiff's poor financial history was a legitimate concern for RPD in hiring to fill a certified law enforcement position, in this case Corbin's prior financial history had blemishes on it that were just as bad as the negative aspects of Plaintiff's prior financial history.  For example, Corbin had a history of not paying his taxes. Doc. 50, pg. 10.  Consequently, the Court considers Defendant's reliance on Plaintiff's poor financial history as a reason for not hiring her to be pretextual in nature considering that Defendant hired Corbin notwithstanding his prior financial problems.

Plaintiff effectively challenges the Defendant's claim that she was not hired because she displayed a pattern of dishonesty. In regard to the Rio Rancho traffic incident, Merritt had recorded in his PBIR that Plaintiff "was surprised by this [the crash report stating that Plaintiff was at fault for the crash] and said she was never told she had been found to be at fault and that she was never cited for the incident. April [the Plaintiff] said she never saw the crash report." *Def't's Ex.2A, pg. 9*. Further, the Court notes that Merritt never wrote in his PBIR that Plaintiff's version of the sexual assault incident is different from that recorded in the police report. *See*

*Deft's Ex. 2A*. Rather, Merritt summed up his report by concluding that "[d]uring this interview April answered all questions posed to her. She appeared to be honest and open and did not appear to have attempted to conceal any fact." *Id. at pg. 10*.

The Court finds that the Plaintiff has raised sufficient facts to rebut the Defendant's legitimate reasons for not hiring her such that a reasonable fact finder could find them unworthy of credence.

D.   Plaintiff's Additional Facts to Show Pretext

The Plaintiff offers the following additional facts which she claims further raises genuine disputes of material fact regarding the veracity of Defendant's legitimate reasons: (1) the two statements allegedly made by Goar about not wanting to hire female police officers; (2) Reyes' statement that Reyes heard from two sergeants who heard from Merritt that Carolee Jones will be fired as soon as the Plaintiff's lawsuit ends; (3) there were no female officers hired at RPD while Goar and Born were in charge; (4) the two female officers hired prior to and after Plaintiff submitted her application (Bailey and Jones respectively), both filed EEOC charges; (5) Corbin, the male officer that Defendant decided to hire, had "extensive criminal and financial problems" that the Defendant overlooked. *Doc. 50, pg. 11-12*.

Indeed, the Court agrees that a number of Plaintiff's additional facts also carry some weight in showing pretext. For instance, Plaintiff offers the two statements made by Goar about not wanting to hire female police officers. During the hearing on February 27, 2014, Plaintiff's counsel asserted that as second in command of RPD, Goar must have had some input in the ultimate decision not to hire the Plaintiff.

The Defendant contends that the so called Cat's Paw Doctrine does not apply here. Under this doctrine, "an employer may be liable for the acts of a biased subordinate, even if that

subordinate is not the formal decisionmaker." *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 482 (10th Cir. 2006). To prevail under the Cat's Paw Doctrine, a plaintiff must show that a biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action. *Id.* at 487; *see Lobato v. New Mexico Env't Dep't*, 733 F.3d 1283, 1295 (10th Cir. 2013) (stating that an employer is not liable under a subordinate bias theory if the employer did not rely on any facts from the biased subordinate in ultimately deciding to take an adverse employment action).

For purposes of determining whether Defendant is entitled to summary judgment, the important issue here is not whether RPD's final decision maker should be held accountable for Goar's discriminatory statements, but rather, the issue is whether a reasonable fact finder can infer from the available facts that Goar communicated his discriminatory intent to Merritt or Born— two men who indisputably were involved in making the final hiring decision. Upon viewing the facts in the light most favorable to the Plaintiff, the Court finds that a reasonable fact finder could infer that Goar, as second in command of a small police department, could have influenced the final decision makers based on his alleged bias against female officers.

The Court finds that Plaintiff's additional facts taken as a whole generate further disputes of material facts requiring trial on the merits.

## CONCLUSION

The Court recognizes that its role is "to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Companies*, 468 F.3d 1243, 1250 (10th Cir. 2006).  Upon viewing all the facts in the light most favorable to the Plaintiff and drawing all reasonable inferences from the record in her favor, the Court finds that the Plaintiff has offered

facts sufficient to weaken the Defendant's legitimate reasons as to permit a reasonable fact finder to infer that Defendant did not act for the asserted non-discriminatory reasons in rejecting Plaintiff's employment application. Therefore,  Defendant's Motion for Summary Judgment is hereby **DENIED**.

      **SO ORDERED.**

_____

UNITED STATES DISTRICT JUDGE